IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EUGENE HORTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Case No.   02-214-JPG** |
| ) | |
| **MARVIN POWERS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are motions for summary judgment (Doc. Nos. 119, 123).  Plaintiff, currently confined at Menard Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983.  He is challenging the conditions of his former confinement at Tamms Correctional Center, seeking damages and injunctive relief.

In Count I, plaintiff claims that defendants Terri Caliper, Marvin Powers, and Delight Griswold violated his Eighth Amendment right to be free from cruel and unusual punishment by depriving him of medical attention for injuries suffered following a sexual assault on December 12, 2001.[1]  In Count II, plaintiff claims that defendant Charles Roper violated rights protected by the Fourth Amendment by conducting unreasonable strip searches on December 12, 2001.  In Count IV, plaintiff claims that he was mistreated in various ways by defendants Donald Snyder Jr., George Welborn, Marvin Powers, Terrie Caliper, Delight Griswold, Charles Roper, and Officer Massey because of litigation or racial animus, in violation of rights protected by the First and Fourteenth

---

[1]   In this report, the Court will follow the practice of the parties and refer to defendant Delight Griswold Plott as defendant Griswold.

Amendments.[2]

The first motion before the Court was filed by defendants Powers and Griswold (Doc. No. 119). The second motion was filed by defendants Welborn and Snyder Jr. (Doc. No. 123).[3] Both motions are opposed (Doc. Nos. 130, 131). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The material facts, viewed in accordance with this standard, are summarized below. In evaluating the evidence, the Court has not considered statements made without personal knowledge. Fed. R. Civ. P. 56(e). Over plaintiff's objection, the Court has considered relevant aspects of his deposition testimony.[4]

Defendant Powers is a licensed physician. At times relevant to these proceedings, he worked as a medical doctor and medical director of Tamms Correctional Center. In that capacity, he treated plaintiff and learned that plaintiff suffered from chronic hypertension. He participated in efforts to

---

[2] The following claims have been resolved: Count III, all claims against defendants Ashworth and Rhoades, and an Eighth Amendment claim based on missed doses of medication.

[3] Claims remaining against other parties are not addressed in this Report.

[4] In his responses, plaintiff objects to use of his deposition testimony, proposing grounds for finding that the evidence is not reliable (Doc. Nos. 130, 131). The Court finds no seasonable objection to the manner of taking the deposition or the form of questioning. Fed. R. Civ. P. 32(d)(3)(B). Moreover, the Court is not persuaded that plaintiff was subjected to harassment. Fed. R. Evid. 611(a). Accordingly, the Court declines to disregard sworn testimony.

control this ailment by prescribing medication. Defendant Powers knew that uncontrolled hypertension presented a serious risk of symptoms and complications, including chest pain, stroke, heart attack, and death. Powers had supervisory responsibility over medical staff at Tamms.

On December 7, 2001, the U.S. District Court for the Central District of Illinois issued a writ directing defendant Welborn to produce plaintiff for court proceedings in Urbana, Illinois. At some point, the date for plaintiff's court appearance was revised and the original writ was cancelled. The scheduled proceeding pertained to plaintiff's civil rights claims against corrections employees working at a facility other than Tamms. The Tamms facility has a courtroom and videoconferencing equipment.

Early on December 12, 2001, defendant Massey and officer Ashworth escorted plaintiff from his cell. One of the officers physically assaulted plaintiff by repeatedly striking him in the anus and scrotum, using "judo type" punches. During and/or after the assault, plaintiff stumbled down some stairs and experienced stabbing chest pain, pain in his scrotum and anus, uncontrollable shaking, excessive sweating, and feelings of fear and concern.

Later that day, plaintiff left Tamms to attend the court proceeding in Urbana, Illinois. Several doses of blood pressure medication should have accompanied him. When plaintiff was leaving his housing area, he did not see a nurse. Contrary to established policy, the nursing staff did not send medication with plaintiff when he left Tamms.[5] As a result of this omission, plaintiff missed 2 or 3 doses of blood pressure medication. When plaintiff returned to the Tamms facility late the same evening, he did not ask to see a nurse.

---

[5] An administrative directive effective on October 12, 2002, directs members of the health care staff to place an adequate amount of medication in an envelope with the inmate's name and number. Although this directive became effective after the incident described, it reflects institution policy at the relevant time.

Defendant Powers is Caucasian, while plaintiff is African-American. Powers has made provisions for inmates of various ethnic backgrounds to receive medication while away from the facility on a writ.

On December 12, 2001, plaintiff visually inspected himself and observed swelling and unusual markings on his scrotum. The swelling didn't last a long time.

On December 13, 2001, the injured area was slightly painful. Plaintiff was afraid to tell anyone how the injury occurred.

On December 31, 2001, plaintiff sent an emergency grievance to defendant Welborn, complaining of improper medication and sexual abuse.

On January 2, 2002, defendant Welborn's designee signed his name to plaintiff's emergency grievance.

On January 3, 2002, plaintiff sent a note to defendant Caliper, complaining of pain when using the toilet, due to tenderness experienced after being sexually abused by a correctional officer. He spoke with defendant Caliper and reported that a correctional officer had penetrated his anus through his clothes and scrotum. Caliper prepared an incident report, which may have been signed by defendant Welborn.

Also on January 3, 2002, defendant Powers examined plaintiff's anus and surrounding tissue. Powers found no injury suggestive of sexual assault or a painful medical condition. During the exam, plaintiff did not describe an injury to his testicles and Powers did not note any such injury.

On January 11, 2002, a correctional counselor responded to plaintiff's grievance.

On February 11, 2002, defendant Welborn's designee signed his name to plaintiff's grievance.

On March 6, 2002, defendant Snyder's designee signed plaintiff's grievance.

At some point, plaintiff spoke with defendant Welborn while Welborn was making rounds. Plaintiff complained about lack of medication, and Welborn asked for a written statement of concerns. Plaintiff complied with Welborn's instructions.

On several occasions during his confinement at Tamms, plaintiff sent sick call slips seeking a medical examination of his testicles. He wanted treatment to alleviate pain and assurance regarding concerns about sterility.

Plaintiff has been confined at Menard Correctional Center since September 30, 2005. Although his scrotal pain has subsided over time, he experienced occasional pain for more than three years. On occasion, he told defendants Powers and Griswold that he felt miserable. He has not received treatment for his pain, which sometimes keeps him from walking, running track, or doing any activity.

Defendant Powers reviewed records describing plaintiff's treatment. He admits that a mistake was made regarding plaintiff's medication and attributes the error to an incorrect presumption that plaintiff would be remaining at Tamms. Dr. Powers holds the opinion that the missed medication did not cause any injury to plaintiff.

## I. Count I - Powers and Griswold

These defendants seek judgment in their favor on plaintiff's Eighth Amendment claim, arguing that a few missed doses of blood pressure medication did not amount to a serious medical need. This argument is moot in view of Judge Gilbert's order dismissing this aspect of plaintiff's Eighth Amendment claim (Doc. No. 15).

These defendants also argue that the evidence would not support a finding that plaintiff had

or has a serious medical need for treatment of a testicle injury.

A prisoner's medical need for treatment is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Plaintiff's testicle ailment has never been diagnosed as mandating treatment. Accepting reasonable inferences in plaintiff's favor, he can prove that he received a traumatic injury on December 12, 2001. On that date, an ordinary person might perceive the injury to be sufficiently severe to require a doctor's attention. However, plaintiff did not see defendants Powers or Griswold on December 12, 2001, and no facts demonstrate that Powers knew that plaintiff had a serious testicle injury at that time or three weeks later, when he examined plaintiff on January 3, 2002. Moreover, no facts demonstrate that defendants Powers or Griswold knew that plaintiff had a serious testicle injury when, at unknown times, plaintiff informed them that he was feeling miserable.

Absent evidence that these defendants actually knew that plaintiff had a serious testicle ailment, plaintiff cannot prove that they responded to his medical need for treatment of a testicle disorder with deliberate indifference. Defendants Powers and Griswold are entitled to judgment in their favor on the remaining aspect of Count I..

**II.     Count III - Powers and Griswold**

These defendants also seek judgment in their favor on plaintiff's racial discrimination claim. They argue that there is no evidence of disparate treatment on the basis of race.

In order to prove that he was deprived of his right to equal protection, plaintiff must present facts showing that the defendants subjected him to intentional, invidious discrimination. *Shango*

*v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).  Discriminatory intent may be established with evidence of unequal application of a prison policy or system.  However, conclusions of racism are insufficient.  *Hill v. Thalacker*, 399 F. Supp.2d 925 (W.D. Wis. 2005).

In support of his claim that he was singled out for disparate treatment because of his status as an African-American, plaintiff presents employment records which describe job duties without expressly forbidding employees from discriminating against African-Americans.  He also refers to defendant Powers' admission that he has prepared medication for inmates of a variety of ethnic backgrounds and a note authored by defendant Caliper in September, 2003.  These materials do not rationally permit an inference that any of the conduct attributed to these defendants was motivated by an intent to treat plaintiff differently because of his race.  Defendants Powers and Griswold are entitled to judgment in their favor on the equal protection aspect of Count III.

### III.   Count III - Welborn and Snyder

These defendants seek judgment in their favor on Count III.  They argue that the evidence does not support plaintiff's First Amendment retaliation claim or his equal protection claim.  They also argue that the evidence does not permit a finding that they were personally involved in a deprivation of protected rights.

An act performed in retaliation for the exercise of a constitutionally protected right will subject the actor to liability even where the act, if taken for a different reason, would have been proper.  *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978).  A claim of retaliation succeeds upon proof that constitutionally protected conduct was a motivating factor for the adverse conditions. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979).  Suspicious timing alone does not create a reasonable inference that adverse conduct was

motivated by protected activity. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)(six-day lapse between protected conduct and purported retaliatory conduct does not support an inference of retaliation).

"[A]n official meets the 'personal involvement' requirement when 'she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.'" *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994) (*quoting Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

With respect to his First Amendment claim, plaintiff points to evidence showing that a writ directing defendant Welborn to produce him for a court proceeding in Urbana, Illinois, was issued on December 7, 2001. This evidence does not rationally permit an inference that Welborn or Snyder reviewed the writ and recognized that plaintiff was prosecuting civil rights claims. Moreover, no facts could support an inference that they participated in or condoned decisions regarding plaintiff's treatment or that any of their acts or omissions were motivated, at least in part, by plaintiff's litigation.

With respect to plaintiff's equal protection claim, the Court infers that plaintiff was treated differently than other inmates when he was physically assaulted by correctional officers and when the nursing staff neglected to prepare a travel supply of his blood pressure medication. However, no evidence suggests that defendants Welborn or Snyder were personally involved in those events or that they singled plaintiff out for disparate treatment because of his race.

In sum, defendants Welborn and Snyder are entitled to judgment in their favor on Count III.[6]

## IV.     Conclusion

IT IS RECOMMENDED that the motions for summary judgment filed by defendants Powers, Griswold, Welborn, and Snyder (Doc. Nos. 119, 123) be GRANTED. At the close of this case, judgment should enter in favor of defendants Powers and Griswold on Count I and on the equal protection claim asserted in Count III. Judgment should enter in favor of defendants Welborn and Snyder on all claims asserted in Count III. Because the only remaining claims against defendants Welborn and Snyder are contained in Count III, they should be terminated as parties at this time.

**SUBMITTED:     August 8, 2006          .**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] In view of this finding, arguments regarding qualified immunity and injunctive relief are not reached.